IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| NEBRASKA BEEF, LTD., | ) | NO. _____ |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | COMPLAINT AND REQUEST |
| | ) | FOR TRIAL BY JURY |
| UNITED STATES DEPARTMENT | ) | |
| OF AGRICULTURE, | ) | |
| | ) | |
| Defendant. | ) | |

COMES NOW the plaintiff, Nebraska Beef, Ltd., and for its cause of action, states and alleges as follows:

**Parties**

1. Nebraska Beef is a Nebraska Corporation with its principal place of business in Omaha, Nebraska.

2. The USDA is an instrumentality and agency of the United States of America. The USDA may be served herein, pursuant to Rule 4(i)(a) of the Federal Rules of Civil Procedure, by delivering a copy of the Summons and this Complaint to: (1) the United States Attorney for the District of Nebraska or to an Assistant United States Attorney or clerk or employee designated by the Unites States Attorney in a writing filed with the Clerk of this Court or by sending a copy of the Summons and of the Complaint by registered or certified mail addressed to the Civil Process Clerk at the Office of the United States Attorney; (2) by also sending a copy of the Summons and the Complaint by registered or certified mail to the Attorney General of the United States at Washington, District of Columbia; and (3)

by also sending a copy of the Summons and the Complaint by registered or certified mail to the USDA.

## Jurisdiction and Venue

3. This Court has original jurisdiction of this case under 28 U.S.C. § 1331 because this is a civil action arising under the Constitution, laws, or treaties of the United States.

4. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims contained herein occurred, or a substantial part of the property that is the subject of this action is situated in, the District of Nebraska.

## Introduction

5. On January, 14, 2003, plaintiff filed an action against the United States Department of Agriculture seeking a temporary restraining order, preliminary injunction and permanent injunction for various constitutional violations and administrative violations by the defendant attendant to defendant's enforcement of provisions of the Federal Meat Inspection Act ("FMIA") 21 U.S.C. § 601 et. seq.

6. The United States District Court for the District of Nebraska granted plaintiff a temporary restraining order and scheduled a hearing to determine if the temporary restraining order merited an order granting a preliminary injunction until the remaining matters could be litigated.

7. Prior to the hearing for preliminary injunction, the parties reached a settlement agreement. The settlement was memorialized, in part, in the form of an administrative "Consent Decision and Order" ("Consent Decision") signed by the

parties and Administrative Law Judge and filed on January 27, 2003. A copy of the Consent Decision is attached hereto as Exhibit "A."

8. Paragraph 7 of the stipulations in the Consent Decision provides that "FSIS agrees that inspection program personnel will act in accordance with law in carrying out their mandates under the FMIA, and FSIS further agrees that inspection program personnel will carry out their responsibilities in a fair and unbiased manner in accordance with FSIS Directive 4735.3."

## Facts

9. During the time when the TRO was in effect, plaintiff operated its business pursuant to the same federal regulatory guidelines as it had since it began operations. The federal regulatory guidelines were, and are, the same guidelines that every other meat processing facility operates under.

10. Since the TRO was rescinded and the Consent Decision agreed upon, plaintiff has received 58 NRs for allegedly failing to operate its business in accordance with the same applicable federal regulations despite operating its business operations in a consistent and continuous manner.

11. Defendant's inspection personnel have engaged, and continue to engage in unfair and biased, arbitrary and capricious conduct, whereby the inspection personnel create conditions in plaintiff's plant for which the inspection personnel can issue NRs.

12. Defendant's inspection personnel have, and continue to, treat Plaintiff in an unfair and biased manner by issuing NRs for conditions that exist in plaintiff's plant while plants similar in structure and operations to plaintiff's plant, in which the

3

same conditions also exist, are not issued NRs for the occurrence of those same conditions.

### Representative Examples of Biased, Unfair, Arbitrary and Capricious Actions by USDA Personnel

13.     On or about January 30, 2003, defendant's inspection personnel issued plaintiff an NR without proper basis for an alleged violation of federal regulations pertaining to use of plaintiff's pre-evisceration carcass wash, a system by which plaintiff can increase food safety.  Defendant's inspection personnel forced plant personnel to discontinue use of its pre-evisceration carcass wash without any appropriate federal regulatory authority and contrary to appropriate food safety practices.

14.     On or about February 11, 2003, defendant's inspection personnel placed a USDA retention tag on a piece of plaintiff's equipment for an alleged violation.  When the defendant's inspection personnel issued an NR to plaintiff, the inspector indicated that he had placed a retention tag on two separate pieces of plaintiff's equipment for two separate alleged violations.  Plaintiff's personnel indicated in its own record keeping processes that the inspector had made a mistake in his written NR and, in fact, had only placed one retention tag on one piece of equipment.  That inspector later made threatening and retaliatory comments to two of plaintiff's employees which indicated that the inspector's motivations in performing his inspection duties were going to change to the detriment of plaintiff.

15.     On or about April 2, 2003, defendant's inspection personnel issued plaintiff an NR without proper basis for allegedly failing to provide proper documentation of plant protocol regarding use of the plant's "Inspexx" anti-

4

microbial spray system. Plant personnel had proper documentation regarding its "Inspexx" protocol and accumulated sufficient data to comply with federal regulations. Defendant's inspection personnel acted unreasonably, unfairly, arbitrarily and capriciously in failing to execute its duties to acknowledge the proper protocol documentation and data collection or to request such information from plaintiff.

16. In March, 2003, while discussing with FSIS personnel the INSPEXX system, Inspector Harstick, with Seitz and Dev observing, intentionally or recklessly, misled Nebraska Beef with regard to the measurement of retained water; a position, if accepted by Nebraska Beef, would have resulted in a delay of the installation and further expense.

17. On March 4, 2003, an NR was issued by an off-line inspector in retaliation for a Nebraska Beef employee informing the inspector that his manner of communication was inappropriate.

18. On March 10, 2003, an NR was issued by Inspector Fast for ice particles contacting beef carcasses without allowing Nebraska Beef SSOP procedures to operate and allow Nebraska Beef to take control.

19. On March 31, 2003, Inspector Shonka issued an NR claiming Nebraska Beef did not have a thermometer calibration log for shipping thermometers when he knew the document existed and had not yet been filed.

20. On or about April 10, 2003, defendant's inspection personnel at plaintiff's business, employed by defendant and acting within the scope of that employment, declared that plaintiff, contrary to applicable federal regulations, was required to provide defendant with an out-source rail so that defendant could

5

perform certain testing on plaintiff's product.  When plaintiff informed defendant that the applicable federal regulation did not require the test to be conducted on an out-source rail provided by plaintiff, defendant arbitrarily and capriciously denied the existence and content of the applicable regulation.  Due to defendant's knowing and/or reckless behavior and arbitrary and capricious stance and utter failure to verify its position, plaintiff was forced to physically provide defendant with the appropriate federal regulation.

21.   On or about April 16, 2003, Inspection personnel at plaintiff's business, employed by defendant and acting within the scope of that employment, issued plaintiff a NR for an alleged failure to comply with 9 C.F.R. 417.  Plaintiff's personnel contested the issuance of the NR.  A copy of the NR is attached hereto as Exhibit "B."

22.   Leading up to the NR, plant personnel were checking the lactic acid concentration in a barrel of liquid solution used to spray carcasses as a method to reduce the existence of pathogens on the carcass surface.  The spray is part of the plant HACCP plan kept, and approved by industry experts and consultants, pursuant to Federal Regulations.  The concentration of lactic acid must be at or between 2.0 and 2.5 percent.

23.   Plaintiff's plant personnel, appropriately and in accordance with, and pursuant to, company HACCP policy and federal guidelines, tested the lactic acid concentration and recorded the results, again in accordance with, and pursuant to, company HACCP policy and federal guidelines, in the Lactic Acid CCP 2-B Monitoring Log ("Monitoring Log") and the plant continued to use the lactic acid spray.

24. The Inspector employed by defendant unfairly, unreasonable, arbitrarily and capriciously and without proper investigation issued a NR claiming that the result of the test of the lactic acid concentration was .6 percent and thus was below the accepted concentration level effective for reducing the existence of pathogens. Likewise, the Inspector unfairly, unreasonable, arbitrarily and capriciously noted in the NR that plant personnel failed to record a test reading in its Monitoring Log in violation of federal guidelines and company HACCP policy.

25. In order to clear up any confusion about the concentration level of the lactic acid solution and the events described above, a meeting was held between plant personnel and personnel of the defendant. Despite the explanation of plant personnel, Nebraska Beef was informed that, contrary to federal regulations and the Consent Decision, a NR would be issued that day.

26. Despite the knowledge that no food product was compromised in any way by the misunderstanding, plant personnel located the carcasses that were sprayed by the allegedly inadequate lactic acid solution and tagged them indicating that the carcasses could not be released into commerce.

27. Subsequently, Inspection personnel of the Defendant arrived to place USDA tags on the allegedly affected carcasses. Plant personnel notified defendant that the plant had demonstrated control of the carcasses in accordance with federal regulations and company HACCP policy by already tagging the carcasses. The USDA personnel indicated that, contrary to federal regulations and company HACCP policy, they were to tag the carcasses in addition to the company's tags.

28. In an attempt to resolve the tagging miscommunication, another meeting was held between plant personnel and personnel of the defendant. The

personnel of the defendant informed plant personnel that, contrary to federal regulations and plant HACCP policy, defendant was going to tag the allegedly affected carcasses.

29.    Thereafter, defendant unreasonably, unfairly, arbitrarily and capriciously refused to release the tagged product.

30.    On or about April 22, 2003, defendant served upon plaintiff a Show Cause Order stating it believed plaintiff was in violation of the Consent Decision as a result of the April 16, 2003, NR.  A copy of the written correspondence is attached hereto as Exhibit "C."

31.    Specifically, defendant alleged that plaintiff was in violation of paragraph 2 of the Consent Decision which requires plaintiff to implement, validate, maintain and verify its HACCP system in accordance with the requirements of 9 C.F.R. Part 417, meet all critical limits for Critical Control Points ("CCP") in its HACCP plan in accordance with the requirements of 9 C.F.R. 417.2 and implement corrective and preventive actions and reassess its HACCP system, as required by and consistent with 9 C.F.R. Part 417.

32.    Defendant further extended the issuance of the NR to encompass an alleged violation of paragraph 9 and paragraph 10 of the Consent Decision. Defendant arbitrarily and capriciously states the intent behind these paragraphs' respective provisions despite there being no mention of the intent of those provisions of the Consent Decision.

33.    Plaintiff has exercised its right to appeal NRs issued by defendant's inspection personnel.  When plaintiff has exercised its right to appeal, inspection personnel has retaliated against plaintiff by issuing additional unwarranted,

arbitrary and capricious NRs and causing lost production time by forcing plaintiff to stop its production line for unwarranted, arbitrary and capricious reasons.

34. The acts set forth above are representative examples of consistent, ongoing and continuous unfair, unreasonable, arbitrary and capricious actions by the defendant and its employees.

35. From January 27, 2003, to the date of the filing of the present action, defendant has violated the terms of the Consent Decision and continues to violate the terms of the Consent Decision as well as conduct itself in an arbitrary and capricious manner through the above cited examples and other actions to be proven at trial.

## FIRST CAUSE OF ACTION
## (BREACH OF CONTRACT)

36. Plaintiff incorporates paragraphs 1 through 36 as though set forth fully herein.

37. On January 27, 2003, plaintiff and defendant entered into a valid, binding written contract.

38. Defendant has continuously wrongfully and materially breached the contract by failing to act in accordance with law in carrying its mandates under the FMIA and in failing to carry out its responsibilities in a fair and unbiased manner in accordance with FSIS Directive 4735.3.

39. As a result of defendant's wrongful breach of the contract, the January 27, 2003, Consent Decision is null and void and of no legal effect.

40. Also as a result of defendant's failure to comply with the January 27, 2003, Consent Decision plaintiff has suffered monetary damages from loss of production time and lost business revenues in amounts to be proven at trial.

## SECOND CAUSE OF ACTION
## (VIOLATION OF PLAINTIFF'S RIGHT TO DUE PROCESS)

41. Plaintiff incorporates paragraphs 1 through 41 as though set forth fully herein.

42. In acting an unfair, biased, arbitrary and capricious manner, the inspection personnel of the USDA have deprived Nebraska Beef of its property without the due process required by the United States Constitution.

## THIRD CAUSE OF ACTION
## (USDA ACTION ULTRA VIRES TO THE
## AUTHORITY GRANTED IT BY THE FMIA)

43. Plaintiff incorporates paragraphs 1 through 43 as though set forth fully herein.

44. The USDA requires Nebraska Beef to maintain and implement HACCP plans and SSOP plans for its plant operations.  The USDA allegedly is acting under it authority pursuant to the FMIA.

45. The USDA has created Federal Regulations, in contravention of its statutory authority, that impose penalties

46. The FMIA does not authorize the USDA to require Nebraska Beef or, any other meat packing plant, to maintain or implement a HACCP or SSOP plan, or, consequently, to impose any sanction or penalty for the alleged failure to maintain or implement a HACCP or SSOP plan.

## FOURTH CAUSE OF ACTION
## (USDA'S APPLICATION OF FMIA IS ULTRA VIRES TO THE
## AUTHORITY GRANTED IT BY THE FMIA AS APPLIED TO PLAINTIFF)

47. Plaintiff incorporates paragraphs 1 through 47 as though set forth fully herein.

48. Even if this Court finds that the FMIA does grant the USDA authority to require a HACCP plan, under the FMIA the USDA has limited authority to remove its inspectors from a packing facility.

49. The FMIA does not grant the USDA authority to withdraw its inspectors for any alleged deficiencies in a HACCP or SSOP plan.

WHEREFORE, Nebraska Beef respectfully requests that this Court:

1. Enter a preliminary injunction, and, ultimately, a permanent injunction, enjoining defendant from acting unreasonably, unfairly, arbitrarily or capriciously in carrying out its meat inspection duties at plaintiff's plant pursuant to the FMIA.

2. Enter a declaratory judgment that the January 27, 2003, Consent Decision described herein is null and void and of no legal effect as a result of defendant's material breach thereof.

3. Enjoin defendant from taking any further action to enforce or interpret the Consent Decision and its terms.

4. Enjoin the Defendant from taking any regulatory action whatsoever against Nebraska Beef, whether by suspension, withholding or withdrawal of inspection based upon any event occurring at Nebraska Beef prior to May 2, 2003.

5. Nebraska Beef further respectfully requests that the Court enter a monetary Judgment consistent with the award of a jury empanelled in this matter and grant such other and further relief to which plaintiff may show itself justly entitled.

DATED this 2nd day of May, 2003.

                                                NEBRASKA BEEF, LTD., Plaintiff,

                            By:   s/William M. Lamson
                                  William M. Lamson, #12374
                                  Brian J. Brislen, #22226
                                  LAMSON, DUGAN & MURRAY, LLP
                                  10306 Regency Parkway Drive
                                  Omaha, NE  68114
                                  t: (402) 397-7300
                                  f: (402) 397-7824

    AND

                Thomas J. Monaghan, #12874
                Attorney at Law
                1321 Jones Street
                Omaha, NE 68102
                t:  (402) 408-6000
                f:  (402) 408-6001

                ATTORNEYS FOR PLAINTIFF